# IN THE COURT OF APPEALS OF IOWA

No. 19-1579
Filed January 23, 2020

**IN THE INTEREST OF D.P., N.P., and T.C.,**
**Minor Children,**

**J.C., Mother,**
     Appellant,

**T.C., Father of T.C.,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A father and mother separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Judy Johnson of JDJ Law Firm, PLLC, Des Moines, for appellant mother.

Andrea B. McGinn of The Law Shop by Skogerson McGinn, LLC, Van Meter, for appellant father of T.C.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father separately appeal the termination of their parental rights. The children involved in this termination are D.P., age four years; N.P., age three years; and T.C., eighteen months. The mother appeals as to her three youngest children.[1] Only the youngest child, T.C., is the biological child of the father.[2] The mother and father are married.

In this appeal, the mother argues the district court erred in finding clear and convincing evidence existed to terminate her parental rights pursuant to Iowa Code section 232.116(1)(f) and 232.116(1)(h) (2019),[3] termination of her parental rights

---

[1] The mother has three other children not involved in this appeal who have each been placed with their respective fathers.

[2] The father of D.P and N.P. was in custody in Anamosa for attempted murder at the time of the termination hearing. While he timely filed an appeal of the termination order, he voluntarily dismissed his appeal on October 11, 2019.

[3] Section 232.116(1) provides:

> Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:
>
> . . . .
> f. The court finds that all of the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
>
> . . . .
> h. The court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

is not in the children's best interests, and the court should have applied a permissive exception to termination pursuant to Iowa Code section 232.116(3).

Like the mother, the father argues that clear and convincing evidence did not exist to terminate his parental rights pursuant to Iowa Code section 232.116(1)(h), termination of his parental rights was not in his child's best interest, and the court should have applied a permissive exception to termination pursuant to Iowa Code section 232.116(3).

On our independent review of the record, we affirm the termination of both the mother's parental rights and the father's parental rights. The record contains clear and convincing evidence supporting termination.[4] We agree that termination of the parental rights is in the best interest of the children, and the court did not err by refusing to apply a permissive exception to termination.

## I.    Prior Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in November 2017 after both T.C. and his mother tested positive for cocaine at the time of T.C.'s birth. The mother also tested positive for cocaine twice during her pregnancy with T.C. While she initially denied use, she later admitted to

---

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[4] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact-findings, we give them weight, particularly on credibility issues. *Id.* The child's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

actively using cocaine during her pregnancy. The district court removed D.B., N.B., and T.C. from parental custody in November 2017; the children have remained out of parental custody since that time. There has not been a trial period at home.

The children were adjudicated as children in need of assistance in January 2018. Following a dispositional hearing and review hearing, a permanency hearing was held over a period of two days in January 2019. The permanency order that followed directed the State to file a termination petition, with the court finding, "The Court does not believe it is reasonably likely the children can be returned to any of their parents' custody in the next six months—given the level of deceit and denial and criminality." The termination of parental rights hearing was held on May 22 and June 7, 2019. The district court terminated the parental rights in September 2019.

## II.    Legal Analysis

### A. Statutory Grounds

The mother has a history of substance abuse, mental-health concerns, and involvement with domestic violence, both as a perpetrator and a victim. Throughout the life of the child-in-need-of-assistance case, the mother was dishonest concerning her cocaine addiction. While she completed a substance-abuse evaluation in November 2017, she continued to test positive for cocaine throughout the child-in-need-of-assistance proceeding. When confronted with her positive cocaine tests, she denied use. She was not compliant with requests for drug screens by DHS, as she routinely failed to appear for random drug screens and failed to cooperate with sweat patches.

Aggressive and explosive behavior accompanied the mother's failure to address this cocaine addiction. In early 2018, the mother and the father were involved in a physical altercation. During this same time, the mother was discharged unsuccessfully from substance-abuse treatment when she touched a treatment staff member inappropriately and made sexual remarks to a treatment staff member. After what was reported to be an "intimidating" meeting with the mother, the provider changed the discharge summary from "unsuccessfully discharged" to "maximum benefits reached." In July 2018, the mother repeatedly spanked two-year-old N.P. during a supervised visit, remarking that the child was "purposely getting under her skin." On other supervised visits, the mother became involved in escalated verbal exchanges with a librarian as well as with a McDonald's worker, all in the presence of her children.

Paranoid behavior of the mother also accompanied her unaddressed substance-abuse issue. In late 2018, she became escalated with a family safety, risk, and permanency worker and advised the worker not to talk to her. Several minutes later, she demanded to know why the worker was not talking to her. She insisted that there were other FSRP workers in the fast-food restaurant during a supervised visit watching her.

Inconsistent contact by the mother has affected the children. When she repeatedly missed visits, the children were left waiting for her. She also missed other events for the children outside the scheduled visitation, including medical appointments, D.P.'s birthday party, and a Mother's Day luncheon scheduled at the daycare, and she failed to phone the children as prearranged.

On appeal, the mother argues that she has overcome her cocaine addiction by participating in outpatient treatment and, in particular, points to her recent attendance at treatment. She further asserts that this is not a case where she waited until the eve of an important hearing to address her behaviors. We disagree. The mother had positive drug tests for cocaine on May 25, June 22, June 27, and June 29, 2018. While she restarted treatment in August 2018, just prior to the scheduled permanency hearing, she had a positive drug patch test for cocaine in August and November 2018. She attended treatment very minimally in November and December 2018. She failed to attend any substance-abuse treatment in February and March 2019. She then did not reengage in substance abuse treatment until April 2019, one month prior to the termination hearing. While her new counselor testified that he did not feel the mother was currently abusing cocaine, he did not request drug screens due to the mother's self-reported period of sobriety.

The mother further acknowledges only attending substance abuse treatment eleven times from August 2018 until the time of her testimony at the termination hearing in May 2019. After she started treatment in August 2018, she failed to appear for drug screens on August 15, September 13, and December 12, 2018. The mother continued to exhibit aggressive behaviors after reengaging in treatment. While mental-health treatment was also ordered since case initiation, the mother began such in January 2019, sixteen months after removal, and attended one session.

The father also has an extensive substance-abuse history. He was imprisoned for all but several months of the child-in-need-of-assistance case. In

April 2018, the father admitted that he and the mother used drugs together. During the same month, he tested positive for cocaine, his federal parole was revoked, and he was sent to prison on a 2011 cocaine trafficking conviction, serving his time in a federal facility in Missouri. He was moved to the Newton Correctional Facility in October 2018, and was released to a halfway house, Fort Des Moines, where he resided from late December 2018 until April 2019.

While at Fort Des Moines, he was reported to be stumbling, incoherent, and intoxicated. A drug test completed after this incident was negative. He was placed on lockdown for problematic behavior, he "timed out," and was released on April 24, 2019. The father was able to exercise some visits with his son while at Fort Des Moines when not in lockdown. He was unable to attend any visits with his son in April 2019, due to his lockdown status.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.,* 778 N.W.2d 33, 41 (Iowa 2010). D.B., N.B., and T.C. "simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990) (discussing the father's lack of motivation to change and his reversion to his old ways with respect to issues of domestic violence and alcohol and drug abuse).

"It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re C.K.,* 558 N.W.2d 170, 175 (Iowa 1997). We agree that the children could not be

returned to parental custody at the time the termination hearing.  We find clear and convincing evidence supports termination as to the mother and the father on the grounds contained in the district court termination order.

## B. Best Interest

We further agree with the district court that termination of the mother's and father's parental rights is in the children's best interests.   The best-interest determination in relation to these children is not a close call.  The youngest child tested positive for cocaine at birth.  T.C. continues to struggle with breathing difficulties.  At the time of the conclusion of the termination hearing in June 2019, the children had been out of parental custody for a consecutive nineteen months.  T.C. has been in four separate placements since removal, while his two sisters have been in two placements and were preparing to move to a third at the time of the termination hearing.  The lapse of time has taken a toll on the children.  Unfortunately, the parents have only begun to scratch the surface of the issues that were present in November 2017.

In March 2019, the behavior issues for the two older children escalated after visits.  When they returned from a visit, neither D.P. nor N.P. would eat.  D.P refused to take naps.  N.P. would routinely wet herself after returning from visits.  This behavior was described as "explosive" at the daycare following visits, with the oldest child slamming a nap cot into the wall, screaming, striking a teacher in the face, pushing over bookcases, and ripping pictures off the wall.  A physical hold was used to prevent D.P. from hurting herself or others.  During this hold, the child repeatedly attempted to bite the daycare director.

The mother never entered inpatient treatment, despite recommendations. The mother reenrolled in outpatient substance abuse treatment but has only meaningfully participated for a short period prior to the termination hearing. At the termination hearing, she could not state her mental health or substance diagnoses, refused to discuss her addiction, and could not identify a sobriety date.

The father was out in the community briefly following the birth of T.C., but he was imprisoned shortly thereafter. At the time of the termination hearing, he had been released for approximately one month. T.C. has never resided in the same home as his father. In the short period since his release from prison, the father has had only supervised contact with T.C. Following his release from prison, he moved into his mother's home, who also struggles with substance abuse. We recognize that the father started treatment following his release and is working.

The very recent efforts of the mother and the father are commendable, but they are not enough to delay much needed permanency for these young children. While the mother reengaged in treatment in April 2019, and the father was released from prison at approximately the same time, the children have been out of parental custody for a substantial period with no demonstrated period of sustained sobriety by the parents in a noncustodial setting.

"Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.,* 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981)). In this case, the parents' overall track records are not conducive to safe parenting. We credit the parents for their very recent attempts

at change. However, given the length of time the children have been out of parental custody, the need for permanency, and the history of the parents, we affirm the district court on the best-interest factor.

## C. Exceptions to Termination

Lastly, the mother asserts her bond with the children precludes termination and the father asserts placement of T.C. with a relative precludes termination.[5] Based on our review of the record, we cannot find either outweighs the need for permanency, stability, and safety for these three children.

## III. Conclusion

We conclude the statutory grounds for termination are satisfied. We further find that termination of the parental rights of the mother and the father is in the children's best interest and that the trial court did not err in refusing to apply a permissive exception to preclude termination.

**AFFIRMED ON BOTH APPEALS.**

---

[5] Iowa Code section 232.116(3) provides:
> The court need not terminate the relationship between the parent and child if the court finds any of the following:
>> a. A relative has legal custody of the child.
>> b. The child is over ten years of age and objects to the termination.
>> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
>> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
>> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.